IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-02124-LTB

STEVEN H. VIGIL,

      Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

ORDER
_____

Plaintiff, Steven H. Vigil, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order and REMAND for further proceedings.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his December 2002 applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 116, 492] The applications were initially denied on February 21, 2003. [AR 79, 501] An Administrative Law Judge ("ALJ") subsequently conducted an

evidentiary hearing and issued a written ruling on November 28, 2005, denying Plaintiff's applications on the basis that Plaintiff could perform his past work as a janitor and a hospital cleaner, which precluded his claim of disability (Step Four). [AR 68, 512]

On March 2, 2005, the SSA Appeals Council vacated the ALJ's decision and remanded the case for additional proceedings. [AR 76, 524]  The Appeals Council ruled that the ALJ's decision:  did not fully address two treating source opinions; did not address a consulting psychiatrist's opinion; did not address additional mental limitations contained in the state agency psychiatrist's evaluation; and did not address new evidence of Plaintiff's IQ scores.  [AR 76-77] As a result, the Appeals Council directed the ALJ to:  further evaluate Plaintiff mental impairments based on the "expanded record" and new evidence submitted, including Plaintiff's subsequent claim for benefits dated December 13, 2005; further evaluate Plaintiff's mental impairments pursuant to the requirement in 20 C.F.R. § 404.1520a and § 416.1520a; and:

> Give further consideration to the claimant's maximum residual functional capacity during the periods at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).  In so doing, evaluate the treating and examining source opinions . . . and nonexamining source opinions . . . and explain the weight given to such opinion evidence. [AR 77]

As a result, the ALJ held a second hearing and, on October 5, 2007, issued a second decision denying Plaintiff's applications on the basis that Plaintiff could perform other work that exists in significant numbers in the national economy, which again precluded his claim of disability (Step Five). [AR 20]  The SSA Appeals Council denied Plaintiff's administrative request for review, making the denial final for the purpose of judicial review. [AR 8]  Plaintiff timely filed his complaint with this court seeking review of the SSA Commissioner's decision.

## II.  FACTS

Plaintiff was born on December 26, 1967, and has a high school education. [AR 116, 149]  His prior work history consists of employment as a janitor, telemarketer and drive-through clerk. [AR 144, 167, 174, 176]  Plaintiff alleges that he became disabled on December 1, 2002, when he was 34 years old, due to his bipolar disorder. [AR 116, 142]

Plaintiff's medical records reveal that he began receiving mental heath treatment at Spanish Peaks Mental Health Center as early as November 1998. [AR 379]  On August 13, 2001, Dr. Bradley W. Patterson, Ph.D., a neuropsychologist, provided psychological testing and evaluation to Plaintiff for the purpose of vocational rehabilitation.  Dr. Patterson diagnosed Plaintiff with major depression with psychotic features, a history of alcohol abuse in claimed remission, and borderline intellectual functioning based on IQ scores. [AR 101]

In February of 2003, Dr. Daniel Engle performed a consultive examination, in which his diagnostic impression was bipolar mood disorder with psychotic features, learning disorder NOS, and a global assessment of functioning (GAF) score of 50.  After discussing Plaintiff's symptoms, Dr. Engle concluded that it is "quite unlikely he would be able to maintain any on-going full time gainful employment." [AR 248]

Also in February 2003 a state agency non-examining psychiatrist, Dr. J.F. Dyde, M.D., rated Plaintiff as having no restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. [AR 211]  He opined that Plaintiff was not significantly limited in most areas of functioning, but that he was moderately limited in his ability to:  understand and remember detailed instructions; carry out detailed instructions; work

3

in coordination with or proximity to others; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. [AR 197]  Dr. Dyde concluded that Plaintiff "[c]an follow simple instructions, sustain ordinary routines and make simple work-related decisions . . . [c]annot work closely with supervisors, coworkers or general public . . . [c]an accept supervision and relate to coworkers if contact is not frequent or prolonged." [AR 199]

From February through July 2003, Plaintiff reported to the emergency room at Parkview Medical Center several times with depression, suicidal ideation and psychosis, and/or hallucinations. [AR 359, 352, 348]  In June 2003, he was admitted to the Parkview Acute Treatment Unit after attempting suicide; he was discharged three days later with a GAF of 55. [AR 291]  In July 2003, he again presented to the emergency room reporting paranoid thoughts and hallucinations.   Plaintiff was admitted with a GAF of 35 and discharged three days later with an assessed GAF of 55. [AR 317]

During this period, in April 2003, his treating psychiatrist at Spanish Peaks Mental Health Center, Dr. Lorraine Barton-Haas, M.D., diagnosed Plaintiff with a mood disorder NOS psychosis, substance abuse in remission, mixed personality disorder with narcissistic and schitzotypal features, probable borderline IQ, and assessed him with a GAF of 55.  Dr. Barton-Haas opined that Plaintiff had mild limitations in his activities of daily living, moderate limitations in maintaining social functioning and in maintaining concentration, persistence, and pace, and had one or two repeated episodes of decompensation within a 12-month period.  She indicated that Plaintiff's mental functioning was limited but satisfactory in most areas, but was seriously limited in his ability to:  maintain regular attendance and be punctual; sustain an

4

ordinary routine without special supervision; work in coordination with or proximity to others; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; and deal with normal work stress. [AR 259]

In November 2004, Dr. Musharrt Nizami, M.D., Plaintiff's new treating psychiatrist at Spanish Peaks Mental Health Center, indicated a diagnosis of schizoaffective disorder, bipolar type, personality disorders, and assessed a GAF of 55. Dr. Nizami opined Plaintiff had mild or no restrictions in his activities of daily living, and moderate limitations in his abilities to maintain social functioning and to maintain concentration, persistence, and pace. He reported Plaintiff had experienced one to two episodes of decompensation and that he would be absent from work more than four days a month. Dr. Nizami rated Plaintiff's mental functioning as limited, but satisfactory, in most areas, but seriously limited in his ability to: maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. [AR 253]

In July of 2006, Plaintiff attended a consultative psychological examination with Dr. Richard B. Madsen, Ph.D. Dr. Madsen's diagnostic impression was schizoaffective disorder, impaired intellectual functioning, and a GAF of 50. Dr. Madsen's opinion was that Plaintiff's "ability to do work-related activities is impaired" and "[h]e will have difficulty maintaining a regular full-time work schedule, focusing and concentrating on work, and relating to peers, co-workers supervisors, and the general public." [AR 408]

5

Also in July 2006, Dr. Donald Glasco, M.D., performed a consultive examination and, based on his schizoaffective disorder, found Plaintiff had mild restriction in his activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace, as well as no episodes of decompensation of an extended duration. Dr. Glasco opined Plaintiff's longstanding history of schitzoaffective disorder was not severe because Plaintiff's functioning did not appear to be severely impaired. [AR 411]

On May 5, 2007, Plaintiff again reported to the emergency room at Parkview Medical Center with suicidal thoughts, and a GAF of 20. [AR 429, 475]

In July of 2007, Dr. Nizami opined that Plaintiff was disabled due to his bipolar mood disorder, on a State of Colorado Med-9 form. [AR 484-85] On August 10, 2007, Dr. Nizami assessed Plaintiff's GAF at 45, and rated Plaintiff's unable to meet competitive standards in most of his mental functioning abilities; specifically he opined that Plaintiff was unable to meet competitive standards to maintain regular attendance, sustain an ordinary routine, work with others, make simple work related decisions, complete a normal workday, perform at a consistent pace, ask simple questions or request assistance, accept supervision, get along with others, respond appropriately to changes in the work setting, or deal with normal stress. [AR 484, 486]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§

1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2002 (Step One). [AR 22] The ALJ also found that Plaintiff had a severe impairment of affective disorder (Step Two). [AR 22] Because the ALJ

determinated that Plaintiff did not have a impairment or combination of impairments that meets or equals a listed impairment (Step Three), the ALJ went on to assess Plaintiff's RFC. [AR 23-24]

After an evaluation of the evidence, the ALJ found that Plaintiff retains the RFC to "perform a full range of work at all extertional levels but with the following non-exertional limitations:  occasional interaction with supervisors and/or co-workers, occasional dealings with the general public, and no complex tasks (SVP-2 or less)(G.E.D. 1,2)." [AR 24]  As a result of the RFC assessment, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Step Four).  However, after considering Plaintiff's age, education, and work experience, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy (Step Five). [AR 30]  Thus, the ALJ denied Plaintiff's applications because he was not under a disability as defined by the SSA at Step Five of the sequential evaluation process. [AR 31]  On review, the Appeals Council "found no reason" to review the ALJ's decision. [AR 8]

## V.  STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*,

429 F.2d 1149, 1150 (10th Cir. 1970).  With regard to the application of the law, my review is whether the Commissioner applied an incorrect legal standard, or failed to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

### VI.  PHYSICIAN OPINIONS

On appeal, Plaintiff first contends that the ALJ erred when evaluating the opinions of several of his physicians.  Because I agree that the ALJ's order lacks sufficient legal analysis, particularly in light of the remand from the SSA Appeals Council,  I reverse the Commissioner's decision and remand for additional proceedings.

The ALJ is required to weigh the opinions of physicians as follows.  First, the opinions of treating physicians – who have seen a claimant over a period of time for purposes of treatment – are given the most weight.  *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)(a physician who has treated a patient frequently over an extended period of time is expected to have insight into the patient's medical condition).  The opinion of a consultive or examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency or reviewing physician who has never seen the claimant is entitled to the least weight of all.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight:  1) if well supported by clinical and laboratory diagnostic techniques; and 2) if it is not inconsistent with other substantial evidence in the record. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir.1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also* Soc. Sec. Ruling (SSR) 96-2p. A treating source opinion not entitled to controlling weight is still entitled to deference.  *Id.*

In weighing any medical opinion the ALJ must consider the following factors: (1) the duration of the treatment relationship and the frequency of visits; (2) the character and scope of the treatment relationship; (3) the amount of relevant evidence supporting the physician's opinion; (4) how consistent that opinion is with the rest of the record; (5) whether the physician is a specialist; and (6) other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion and if he rejects the opinion completely, he must then give specific, legitimate reasons for doing so. *Id*. at 1301.

In this case, the matter was remanded by the Appeals Council for additional proceedings because the ALJ's decision: (1) did not fully address two treating source opinions (Drs. Lorraine Barton-Haas and Musharrat Nizami); (2) did not address a consulting psychiatrist's opinion (Dr. Daniel Engle); (3) did not address additional mental limitations contained in the state agency psychiatrist's evaluation (Dr. J.F. Dyde); and (4) did not address new evidence of Plaintiff's IQ scores (Dr. Bradley Patterson). The Appeals Council directed the ALJ on remand to give "further consideration" to Plaintiff's RFC and, in so doing, to "provide rationale with specific references to evidence of record in support of assessed limitation" and to "evaluate the treating and examining source opinions . . . and nonexamining source opinions . . . and explain the weight given to such opinion evidence." [AR 76-77]

Here, Plaintiff asserts that the ALJ failed to follow the directions in the remand or to properly analyze the physician opinions as required by the SSA regulations. Plaintiff first contends that the ALJ's decision fails to properly evaluate the opinion of Dr. Patterson, who

10

assessed Plaintiff's IQ scores and diagnosed him with borderline intellectual functioning, with defects in verbal and written language, in August 2001. Plaintiff argues that the ALJ's decision did not discuss or weigh Dr. Patterson opinion at all, despite the Appeals Council remand which directed the ALJ to "resolve" newly received evidence "that show that claimant has borderline intelligence as established by IQ testing in August 2001."

In response, the Commissioner concedes that the ALJ's order does not address the IQ scores or Dr. Patterson's opinion that Plaintiff suffers from borderline intellectual functioning. The Commissioner argues, however, that such evidence is "not relevant to the case at bar because it occurred 15 months prior to Plaintiff's alleged onset date" and "does not offer any opinion contrary to the mental work restrictions found in the hearing decision." In addition, the Commissioner notes that Dr. Patterson's conclusions are contradicted by other evidence in the record which supports a conclusion that Plaintiff does not suffer from reduced intellectual functioning. The Commissioner argues that, as a result, the ALJ did not err when he did not address this "remote examination for the prior claim."

The ALJ is required, however, to weight every relevant medical opinion he receives. *See* 20 C.F.R. §§ 404.1527(d), § 416.927(d). Moreover, while Dr. Patterson's opinion here preceded the onset date, it is still relevant as to Plaintiff's mental history as well as his current mental functioning. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004)("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ"). Finally, and most importantly, the Appeals Council specifically directed the ALJ to address this evidence on remand. Therefore, I conclude

that the ALJ's decision is legally insufficient in that it fails to properly evaluate the August 2001 medical evidence and the resulting opinion of Dr. Patterson.

Plaintiff also asserts that the ALJ erred in evaluating the opinion of Dr. Dyde, the state agency psychiatrist, in that the decision did not explain the weight afforded to that opinion. Plaintiff argues that although the decision adopts some of Dr. Dyde's opined mental restrictions in the assessed RFC, it does not address all of the restrictions stated and the decision fails to explain why. Plaintiff again notes that the Appeals Council remand specifically directed that the ALJ address Dr. Dyde's opinion regard Plaintiff's mental limitations and to explain the weight given to the opinion evidence as related to Plaintiff's RFC.

The Commissioner argues, in response, that although the ALJ may not have expressly articulated the weight given by him to the opinion, it is clear that the ALJ relied upon it in that his RFC determination adopts Dr. Dyde's conclusion that Plaintiff can follow simple instructions, sustain ordinary routines and make simple work-related decisions, but could not work closely with supervisors, co-workers and the general public. The Commissioner further argues that the ALJ's failure to articulate the weight he gave to Dr. Dyde's opinion constitutes, at the most, harmless error.

I again disagree. The ALJ may have adopted some of Dr. Dyde's determinations but, as pointed out by Plaintiff, the decision did not fully adopt the opinion by incorporating the specific moderate mental restrictions designated by Dr. Dyde on the Mental Health Functional Capacity Assessment form. The testimony of the vocational expert supports Plaintiff's contention that if these restrictions of moderate limitation had been incorporated into Plaintiff's RFC, he would have been eliminated from all competitive work. [AR 51] As a result, I cannot find that the

ALJ's failure to fully weigh Dr. Dyde's opinion in his decision constituted harmless error.

In conclusion, I agree that the ALJ's decision fails to demonstrate that he fully weighed the opinions provided by Drs. Patterson and Dyde, as required by the Appeals Council remand as well as 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) and SSR 96-2p, when he assessed Plaintiff's RFC.  Accordingly, because the Commissioner fails to demonstrate reliance on the correct legal standards, reversal is appropriate.  *See Winfrey v. Chater, supra.*

## VII.  REMAINING CLAIM OF ERROR

On appeal, Plaintiff also asserts that the ALJ's RFC determination lacks an evidentiary basis and that his RFC, as found by the ALJ, is not supported by substantial evidence in the record because it is not consistent with any physician's opinion related to Plaintiff's functional limitations.  In fact, Plaintiff argues that because the ALJ either rejected or failed to adequately address all of the medical opinions in the record, it is impossible to determine what if any evidence supports each limitation contained in the RFC determination.  Plaintiff further argues that the ALJ's reasons for rejecting or giving little weight the physicians' opinion in the record were not valid and, as such, the ALJ improperly substituted his opinion for that of the expert opinions in the record.  *See McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002).

On remand, I direct the ALJ to provide, in his decision, an evidentiary basis for each limitation contained in the RFC determination as required by 96-8p and the Appeals Council remand, which directed the ALJ to "provide rationale with specific reference to evidence of record in support of assessed limitations." [AR 77]  In so doing, I decline Plaintiff's request for an immediate award of benefits.

Accordingly, IT IS ORDERED that the Commissioner's decision is REVERSED and REMANDED to the SSA Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: July  22 , 2009, in Denver, Colorado.

                                                    BY THE COURT:

                                                      s/Lewis T. Babcock  
                                                    LEWIS T. BABCOCK, JUDGE